UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VINCENT J. FAZIO,

                                Plaintiff,

                v.                              6:05-CV-1071

NBT BANCORP, INC.,

                                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

RONALD J. KIM, ESQ.
Attorney for Plaintiff
P.O. Box 318
Saratoga Springs, New York 12866

MACKENZIE HUGHES L.L.C.                          ARTHUR W. WENTLANDT, ESQ.
Attorneys for Defendant                          MARK SCHLEGEL, ESQ.
101 South Salina Street
Suite 600
Syracuse, New York 13221

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        Plaintiff Vincent J. Fazio ("plaintiff" or "Fazio") brings this action against defendant

NBT Bancorp, Inc. ("defendant" or "NBT") under the Americans with Disabilities Act ("ADA"),

42 U.S.C. §§ 12101-12213, and the New York State Human Rights Law ("NYSHRL"), N.Y.

Exec. Law §§ 290-301.  Specifically, plaintiff brings two causes of action for employment

discrimination based on disability; one under the ADA, and another under the NYSHRL.

Defendant moves for summary judgment under Federal Rule of Civil Procedure 56. Plaintiff opposes. Oral argument was heard on September 21, 2007, in Utica, New York. Decision was reserved.

## II. <u>FACTS</u>

Plaintiff is an alcoholic. For a period of time before 1990, he also abused cocaine.

In 2003, defendant NBT, a bank based in Norwich, New York, hired plaintiff as a municipal banking officer. Plaintiff was based at NBT's office in Canajoharie, New York; however, his position required regular travel between NBT's branch offices in eastern Upstate New York.

As part of the NBT orientation process, plaintiff received a copy of NBT's "Employee Information Guide." The guide provides that "[r]egular attendance and punctuality are important to ensure optimum productivity and customer service," and "[i]f it is necessary for you to be absent or late, you should call to advise your <u>Manager/Supervisor</u> as early as possible." (Def.'s App. Ex. 31 at 29 (underscore in original).)

On August 9, 2004, plaintiff told John Deierlein ("Deierlein"), NBT's Vice President of Municipal Banking and plaintiff's immediate supervisor, that he had a drinking problem and was involved in ongoing family court proceedings related to a June 2003 divorce from his ex-wife. Specifically, plaintiff informed Deierlein that he had been summoned to family court for a hearing on Monday, August 23, and that he would be required to attend an inpatient alcohol rehabilitation program. Deierlein acknowledged plaintiff's obligations with respect to the hearing and told plaintiff that he would be on vacation during the week of August 23. Deielein further told plaintiff that he was to check in with Deierlein's assistant, Betsy Barry ("Barry"), while he was on vacation.

On Friday, August 20, 2004, plaintiff faxed the family court documents related to the hearing to NBT's human resources department.  Thereafter, plaintiff learned that the hearing was adjourned until October 6, 2004.

Plaintiff worked sporadically during the week of August 23-27, 2004.

On August 23, plaintiff telephoned Barry and told her that he would not be working that afternoon because he had a doctor's appointment.  Of her own accord, Barry took detailed notes of this conversation, as well as all others she had with plaintiff during the week of August 23-27.

On August 24, plaintiff left a voice-mail message for Barry informing her that he would not be coming into work that day because he was seeking placement in an inpatient rehabilitation program.  Plaintiff also telephoned Diane Mohr ("Mohr"), NBT's Assistant Vice President and Benefits Specialist, and told her that he was seeking placement in an inpatient rehabilitation program and would call her back with details regarding the preparation of the necessary disability benefits paperwork.

On August 25, Barry was informed that plaintiff had missed an 8:30 a.m. appointment at NBT's office in Hobart, New York.  Plaintiff telephoned Barry at 10:00 a.m. and told her that he would reschedule the Hobart appointment and would be at NBT's office in Saratoga Springs, New York, that afternoon.  Plaintiff telephoned Barry again that afternoon and told her that he was in Saratoga Springs for a personal appointment and that he had another personal appointment the next morning but would be at the Canajoharie office after that.  At some point that day, Karen Sastri ("Sastri"), NBT's Vice President of Corporate Employee Relations, became aware of plaintiff's situation, though it is unclear how, and made the following notation on a pad of paper:

<u>Vince Fazio</u>
– will he be going to work
– brief his manager - requesting to take leave in future; need to watch performance and not discuss this matter w/ Vince @ this time

(Kim Aff. Ex. I.)

On August 26, plaintiff left a voice-mail message for Mohr informing her that he would not be coming into work that day due to an unspecified contagious illness.  He also asked her to send him the disability benefits paperwork.  Later that day, plaintiff telephoned Mohr and told her and Sastri, who participated in the call via speaker phone, that he would be entering an inpatient rehabilitation program for his alcoholism.  Mohr and Strasi asked plaintiff when his last day of work would be and he told them August 27.  That afternoon, Sastri telephoned Barry and informed her of the conversation with plaintiff.  That evening, plaintiff left a voice-mail message for Barry, which she did not receive until the next morning, informing her that he thought he needed to go out on disability but "he really needed to get some correct medical information."  (Def.'s App. Ex. 27at 3.)

On August 27, at 7:50 a.m., plaintiff telephoned Barry and told her, among other things, that he was going to reschedule a morning appointment he had at the NBT office in Middleburgh, New York, for later that afternoon.  He also told Barry he would be into work on Monday, August 30, if he was feeling better.

On August 28, plaintiff visited his family physician, Dr. William A. Papura ("Dr. Papura"), who determined that plaintiff was disabled due to his addiction to alcohol and drugs.  Dr. Papura completed the necessary disability benefits paperwork and, with the understanding that plaintiff would enter an inpatient rehabilitation facility, determined that plaintiff would not be able to return to work until September 19, 2004.

On Monday, August 30, Deierlein returned from vacation.  Barry informed him of the substance of her communications with plaintiff during the prior week, including plaintiff's indication that he would be out of work for a while.  Deierlein attempted to contact plaintiff but was unsuccessful; however, he left voice-mail messages on plaintiff's mobile telephone and work telephone.  Plaintiff did not contact Deierlein or come into work during the week of August 30-September 3.  During that week, Deierlein, Sastri, and Thomas Delduchetto ("Delduchetto"), NBT's Executive Vice President of Human Resources, met to discuss plaintiff's situation and the determination was made to terminate his employment.

On Friday, September 3, plaintiff telephoned Mohr and told her that he had submitted the necessary disability benefits paperwork to Dr. Papura and would be entering Conifer Park, a chemical dependency treatment facility, on September 6 or 7.

The next day, plaintiff faxed a letter to Deierlein stating, among other things, that he was on short term disability "to try to find answers to [his] many visable [sic] physical illnesses," and would be entering rehabilitation and unable to return to work until October 4, 2004.  (Def.'s App. Ex. 24.)  Deierlein did not receive the faxed letter until he returned to work on Tuesday, September 7.

On September 5, plaintiff was admitted to Conifer Park and remained there until September 19.

In a letter dated September 9, 2004, Sastri informed plaintiff that his employment at NBT was terminated effective September 3, 2004, for "non-compliance with NBT's Attendance Policy."  (Def.'s App. Ex. 23.)  Specifically, Sastri noted plaintiff's failure to report to work during the week of August 30-September 3, 2004, as well as his failure to communicate with Deierlein during that time period.

On September 28, 2004, plaintiff's physician faxed the necessary disability benefits paperwork to Mohr.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and, on June 30, 2005, received a Notice of Right to Sue from the EEOC. On June 30, 2005, plaintiff filed this action.

## III. STANDARD OF REVIEW

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991). The court will not try issues of fact on a motion for summary judgment, rather it will determine "whether the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving

party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct.

1348, 1356 (1986);  Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).

## IV.  DISCUSSION

Defendant asserts three major points in support of its motion for summary judgment:

(1) plaintiff is not an "individual with a disability" under the ADA or NYSHRL; (b) defendant

has asserted a legitimate nondiscriminatory reason for terminating plaintiff's employment;

and (c) plaintiff has failed to demonstrate that defendant's asserted legitimate

nondiscriminatory reason is a pretext for discrimination.

The ADA provides that "[n]o covered entity shall discriminate against a qualified

individual with a disability because of the disability of such individual in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."  42

U.S.C.A. § 12112(a) (2005).  Under the ADA, "[t]he term 'disability' means, with respect to an

individual—(A) a physical or mental impairment that substantially limits one or more of the

major life activities of such individual; (B) a record of such an impairment; or (C) being

regarded as having such an impairment."  § 12102(2).  Plaintiff asserts that he is an

individual with a disability under § 12102(2)(A) and (C).

To be sure, alcoholism is an "impairment" under the ADA.  Reg'l Econ. Cmty. Action

Program, Inc. v. City of Middletown, 294 F.3d 35, 46 (2d Cir. 2002).  Whether it is an

impairment that substantially limits a major life activity is a separate question, and one that

the EEOC regulations interpreting the ADA, which are not binding authority but which both

parties rely upon in support of their arguments, provide guidance in answering.  According to

the regulations, "the following factors should be considered in determining whether an

individual is substantially limited in a major life activity: (i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. Pt. 1630, App. § 1630.2(j)(2). The regulations also provide that "[w]ith respect to the major life activity of 'working' . . . [t]he term 'substantially limits' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Id. § 1630.2(j)(3)(I).

In this case, plaintiff does not argue that the direct effects of his alcoholism, e.g., physical symptoms associated with intoxication, anxiety, depression, etc., significantly restrict his ability to work. In fact, he admits that he was perfectly capable of performing his duties as a municipal banking officer while at NBT and now works as a Chief Financial Officer at another bank in Upstate New York. Rather, plaintiff argues that his ability to work is significantly restricted because he must take leaves of absence to participate in inpatient and outpatient rehabilitation programs. In support of that contention, plaintiff has shown that he was completely restricted in his ability to work from September 5-19, 2004, while at Conifer Park, and has raised questions of fact as to whether his participation in a months-long outpatient rehabilitation program restricted his ability to work full-time. (See Praga Aff. ¶¶ 14-15.) However, plaintiff has failed to show that such leaves of absence are of a permanent or long-term nature. Showing that leaves of absence have restricted his ability to work in the past, is not necessarily the same as showing that similar leaves of absence will restrict his ability to work in the future. That is not to say, of course, that plaintiff's impairment is not of a permanent or long-term nature, or that he will never need to take a leave of absence to

attend rehabilitation again.  Indeed, plaintiff's assertion that his alcoholism is with him all the time and that he has to work daily to maintain his sobriety is undisputed.  But he still must show that the leaves of absence and/or his daily battle with alcoholism substantially limit the major life activity of working, and he has not done so.

However, that is not the end of the inquiry.  As stated above, under the ADA, a plaintiff is also considered an "individual with a disability" if his employer regards him has having a physical or mental impairment that substantially limits a major life activity.  See § 12102(2).  Thus, irrespective of whether plaintiff's alcoholism actually does substantially limit his ability to work, if NBT regarded it as so limiting, he is an "individual with a disability" under the ADA.

Plaintiff contends that NBT terminated his employment because he was an alcoholic and, therefore, it must have regarded his alcoholism as a substantial limitation on his ability to work.  It is undisputed that NBT knew that plaintiff was an alcoholic at the time it terminated his employment.  However, it is also undisputed that plaintiff worked sporadically during the week of August 23-27, 2004, and not at all during the week of August 30- September 3, in violation of NBT's attendance policy.  While plaintiff notified NBT that August 27 would be his last day, he did not go through the normal channels in seeking a leave of absence due to disability.  In fact, NBT did not receive the necessary disability benefits paperwork until September 28, 2004.

Plaintiff points to a notation made by Sastri stating "brief his manager - requesting to take leave in future; need to watch performance and not discuss this matter w/ Vince @ this time."  (Kim Aff. Ex. I.)  However, this notation is sufficiently ambiguous such that it cannot be said to raise a genuine issue of material fact as to whether NBT regarded plaintiff as having a

disability.  Thus, plaintiff has failed to show that NBT regarded him as having a disability under the ADA.

In some respects, the term "disability" is defined more broadly under the NYSHRL as compared to the ADA; however, that fact does not help plaintiff in this case.  In other words, the reasoning set forth above applies equally to plaintiff's ADA and NYSHRL causes of action.

Therefore, plaintiff is not an individual with a disability under the ADA or NYSHRL. Consequently, NBT's motion for summary judgment will be granted.

**V. <u>CONCLUSION</u>**

Accordingly, it is

ORDERED that:

1.  Defendant NBT's motion for summary judgment is GRANTED; and

2.  The complaint is DISMISSED in its entirety.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

United States District Judge

Dated:  March 17, 2008
        Utica, New York.